## Olsommer Appeal. No. 2

*Leo A. Achterman* and *Sidney L. Krawitz*, for appellant.

*Peter P. Jurchak*, Special Deputy Attorney General, for Pennsylvania Liquor Control Board.

DAVIS, P. J., April 29, 1948.—This is an appeal by Catherine J. Olsommer from the refusal of the Pennsylvania Liquor Control Board to issue a hotel liquor license and amusement permit for premises situate in Greene Township, Pike County, Pa.

A former appeal was sustained and the Pennsylvania Liquor Control Board directed to conduct an additional hearing in order to consider the fact that title to the premises proposed to be licensed had been transferred from Joseph Olsommer and Catherine J., his wife, to Catherine J. Olsommer subsequent to the hearing before the Pennsylvania Liquor Control Board and prior to the hearing on the original appeal: Olsommer's Appeal, 59 D. & C. 343. In accordance with the order of court the matter was listed for further hearing by the board and in due course the board entered its order refusing the hotel liquor license and amusement permit. The board in its opinion stated, inter alia:

"However, the board is of the opinion that the facts, as revealed by the original investigation, clearly point to a joint operation of the business by husband and wife, and that the transfer of title to the property does not, in itself, remove the original objections established before the board that the husband will have a joint interest, along with the applicant, in the operation of the establishment, if licensed in her name. The board is, therefore, of the opinion that under all of the facts now contained in the record pertaining to the case, this application for a new hotel liquor license and amusement permit should be refused."

In its first opinion the board cited the following reasons for its refusal to grant the license:

"1. Applicant will not be the sole bona fide owner of the business, the only person making an investment

therein nor the only one who will derive profit from its operation.

"2. The husband of applicant, Joseph Olsommer, who is a joint owner of the business, is a State forest ranger, whose position involves the enforcement of penal laws of the Commonwealth of Pennsylvania."

At the hearing before the court on this appeal it was stipulated by counsel for the parties "that the appeal in this case be heard by the submission of the record of testimony already taken, without the taking of additional testimony". Therefore, we will determine the matter on the testimony taken before the examiner for the board and before the court on the former appeal.

We will consider the questions as stated by the board in order listed.

The Liquor Control Act provides, inter alia:

"Upon receipt of the application, the proper fees, and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed, and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, and the applicant seeks a license for a hotel, restaurant or club as defined in this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club, may, in its discretion, issue a license: . . .": Act of November 29, 1933, Sp. Sess., P. L. 15, sec. 403, as amended by the Acts of July 18, 1935, P. L. 1246, sec. 1, and June 16, 1937, P. L. 1762, sec. 1, 47 PS §744-403.

At the hearing before the board, Charles Carroll, enforcement officer of the Pennsylvania Liquor Control Board, testified as follows:

"The building for which the license is requested is owned jointly by applicant Catherine Olsommer and her husband Joseph. I questioned both of these parties concerning the source of the money for applying for the license and the equipment for the place. The money for the business was secured through a mortgage on the property from the Hawley bank. It was borrowed by both Joseph and Catherine. The amount being $1,200, borrowed on August 7, 1946. I also questioned Joseph Olsommer as to whether or not he intended to work on these premises and he stated that he would work on the premises. Catherine Olsommer, his wife and the present applicant, also stated that her husband would assist her in the operation of the business and that the profits would be shared by both husband and wife."

On cross-examination applicant testified as follows:

"Q. You heard the testimony of the officer regarding a statement to him during the investigation that your husband would share in the profits of this business?

"A. Yes.

"Q. Why did you make such a statement to him?

. . . . . .

"A. The only reason I made that statement is because they asked my husband and I didn't know what he was going to do. I don't want him on the license. I want it myself."

The next question was asked by applicant's attorney as follows:

"Q. Did you tell the officers that you were going to share the profits with your husband, do you recall telling them that?

"A. No, I don't."

Officer Beierschmitt was present and counsel agreed that his testimony would corroborate the testimony of Officer Carroll. This testimony was followed by testimony of applicant that she would be the

sole owner of the business, that the profits would go only to her. At the hearing before the court Officer Carroll testified in part as follows:

"When I questioned the Olsommers as to the money for the license and for fitting up the premises for the hotel, I learned from them that a mortgage had been raised on this property of $1,200, this mortgage being signed by both of the owners, the Hawley bank being the grantor of this mortgage, the amount being $1,200. I questioned Mrs. Olsommer, applicant in this case, if she had any assets separate from those of her husband's, and she replied that she had none. I then asked her, and I also asked Joseph Olsommer, if Mr. Olsommer would work around these premises, and they both admitted that Mr. Olsommer would assist his wife in the operation of these premises."

Applicant also testified that if the license was granted she would be the sole person interested in the business, that her husband would not have any interest in the business and that she would not expect him to assist in the operation of the business. She did not deny that she made the statements testified to by the officer nor did she offer any explanation of any kind in regard to the statements. Joseph Olsommer testified that he was the husband of applicant, that his occupation was a State forest ranger and that he was employed by the Department of Forests and Waters and worked at Promised Land State Park, that he was on 24-hour service and worked from 8 o'clock until 4:30 o'clock, actual work in the field; that his duties required him to stay over night at Promised Land occasionally although later in the testimony under questioning by the court he stated that he was only able to stay at home "just once in awhile, a night back and forth" and indicated that the rest of the time the nights were spent at Promised Land. From the testimony we find that Joseph Olsommer acquired title to the property in question by inheritance,

that subsequently it became vested in himself and his wife, the present applicant; that on April 19, 1947, after the board had refused to grant the license, the same was conveyed to Catherine J. Olsommer individually; that the funds used to equip the premises as a hotel were obtained from savings made by applicant over many years from money given to her by her husband, from certain moneys the applicant had saved from working in and about Promised Land, and from the Hawley National Bank on a mortgage on the premises in question given by applicant and her husband while they held the property as tenants by entirety.

There is nothing in the evidence to indicate that the plan or design for the operation of this business has been changed since the date of the original application for license. While title to the property has been placed in applicant alone there is no hint that this was done pursuant to a change in the arrangements between the husband and wife as to the operation of the premises. If we give credence to the testimony of Officer Carroll, corroborated by Officer Beierschmitt, the statements made by applicant and her husband to him clearly show that the husband had a pecuniary interest in the business. Joseph Olsommer has not denied making these statements to Officer Carroll. The applicant on cross-examination acknowledged making the statement that the husband would share in the profits of the business and gave her reason for making the statement to the officer, and immediately thereafter in reply to a question put by her attorney, stated she didn't recall telling the officers that. Considering all the surrounding circumstances, the fact that the property was originally acquired by Joseph Olsommer by inheritance, that a part of the money used for the improvement of the property was acquired by savings from the earnings of Joseph Olsommer, that the sum of $1,200 used in the improve-

ment thereof was borrowed by Joseph Olsommer and his wife, and that apparently only a small part of the funds used for improvement was contributed by the wife from her separate earnings, we believe that the statement testified to by Officer Carroll as made by the applicant to him at the time of his investigation pursuant to the application for a license represents the true facts; that the husband, Joseph Olsommer, would in a measure assist in the operation and management of the business and share in the profits, and therefore applicant is not the only person in any manner pecuniarily interested in the business so asked to be licensed and the Pennsylvania Liquor Control Board was justified in refusing to grant the license.

We do not disagree with counsel for applicant as to the status of a married woman. We do not say that because of the marriage relationship alone the husband is pecuniarily interested in the proposed license but rather we say that in our opinion under all the testimony the husband is pecuniarily interested.

The case of In re Appeal of Kanabroski, 32 Luz. 259, cited by counsel for appellant, is not applicable to the present situation for the reason that in the present case the board produced evidence to meet the burden of proof.

We will now pass to the second question. The Pennsylvania Liquor Control Act of 1933, as amended, supra, section 401, provides:

". . . No person who holds, either by appointment or election, any public office which involves the duty to enforce any of the penal laws of the United States of America, or the penal laws of the Commonwealth of Pennsylvania, or any penal ordinance or resolution of any municipal subdivision of this Commonwealth, shall be issued any hotel or restaurant liquor license, nor shall such a person have any interest, directly or indirectly, in any such license."

It is admitted that Joseph Olsommer is a State forest ranger employed by the Department of Forests

and Waters. The act of assembly defines the powers of these officers as follows:

"The person employed, under the provisions of this act, by the Department of Forests and Waters for the protection of the State forests shall, after taking the proper official oath before the clerk of the court of quarter sessions of any county of the Commonwealth, be vested with the same powers as are, by existing laws, conferred upon constables and other peace officers, to arrest on view, without first procuring a warrant therefor, persons detected by them in the act of trespassing upon any forest or timber land within this Commonwealth, under such circumstances as to warrant the reasonable suspicion that such person or persons have committed, are committing, or are about to commit any offense or offenses against any of the laws now enacted or hereafter to be enacted for the protection of forests and timber lands. Such officers shall likewise be vested with similar powers of arrest in the case of offenses against the laws or rules and regulations enacted or established, or to be enacted or established, for the protection of the State forests, or for the protection of the fish and game contained therein: Provided, That the above-mentioned rules and regulations shall have been previously conspicuously posted upon the State forests. Said officers shall further be empowered, and it shall be their duty, immediately upon any such arrest, to take and convey the offender or offenders before a justice of the peace or other magistrate having jurisdiction, for hearing and trial or other due process of law: Provided further, That this act shall extend only to the case of offenses committed upon the State forests, and lands adjacent thereto, and the powers herein conferred upon said officers shall not be exercised beyond the limits thereof, except where necessary for the purpose of pursuing and arresting such offenders, or of conveying them into the proper legal custody for pun-

ishment as aforesaid": The Administrative Code of April 9, 1929, P. L. 177, sec. 1817, 71 PS §477.

Counsel for applicant argues "that Joseph Olsommer is not the type of officer that the legislature had in mind in the class of individuals who are excluded from applying for a license". We cannot agree with this contention. The laws enacted for the protection of the State forests are penal laws of the Commonwealth of Pennsylvania. A State forester has the duty of enforcing these laws and therefore comes squarely within the language of the Liquor Control Act. It is true that the scope of the officer's jurisdiction is limited to State forests or lands adjacent thereto but within his jurisdiction he has the same powers as constables and other peace officers. We cannot speculate upon what was in the minds of the legislators at the time the act was passed but rather must take the plain meaning of the words which constitute the statute.

It is interesting to note the Liquor Control Act (47 PS §744-403) requires the board to be satisfied "that the applicant is the *only* person in any manner pecuniarily interested in the business so asked to be licensed", whereas the provision relating to public officers (47 PS §744-401) provides that such person shall not "have *any* interest, directly or indirectly, in any such license". (Italics supplied.) What is the meaning of the words "any interest, directly or indirectly"? Might the marriage status itself imply such an interest as would preclude the board from granting a liquor license to the spouse of a public officer whose duties involve the enforcement of the penal laws? Since we have found Joseph Olsommer is pecuniarily interested in the business proposed to be licensed it is not necessary for us to pass on this question.

And now, to wit, April 29, 1948, we sustain the act of the Pennsylvania Liquor Control Board and dismiss the appeal at the cost of appellant.